**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| TAREK AL-BIREKDAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:06CV1726-DJS |
| | ) |
| DAIMLERCHRYSLER CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## ORDER

On June 23, 2006, plaintiff Tarek Al-Birekdar filed a petition in the Circuit Court of St. Louis County, Missouri, asserting claims of discriminatory and retaliatory discharge pursuant to the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010 et seq. On December 4, 2006, pursuant to federal diversity jurisdiction, the action was removed to this Court by defendant DaimlerChrysler. Now before the Court is defendant's motion for summary judgment [Doc. #29]. The matter has been fully briefed and is ready for disposition.

### Jurisdiction

It is always the duty of a federal court to examine its own jurisdiction over a matter, and address any subject matter jurisdiction defects that might arise. See, e.g., Wis. Dept. of Corr. v. Schacht, 524 U.S. 381, 382 (1998) ("No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own."). Al-Birekdar does not assert any federal

claims; rather, he asserts only state-law claims under the MHRA. Nevertheless, he avers in his petition that he is a resident of Missouri, and defendant avers in its notice of removal that it is a Delaware corporation with its principal place of business in Michigan. Further, Al-Birekdar has provided interrogatory answers stating that he seeks over $250,000.00 in damages. Twenty-eight U.S.C. § 1332(a) provides federal jurisdiction in cases where the amount in controversy is greater than $75,000 and complete diversity of citizenship among the litigants exists. See 28 U.S.C. § 1332(a). Accordingly, the Court finds that it does have diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

## Background

**Undisputed Facts**

The following facts are those set forth by defendant in its statement of uncontroverted material facts, and admitted as true for purposes of this motion by Al-Birekdar. Al-Birekdar is originally from Syria and is Muslim. He has lived in the United States since 1979; he began working for defendant in 2000 as a full-time, hourly, skilled-trade electrician; and he is a member of the United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW"). As a UAW member, the terms and conditions of Al-Birekdar's employment with defendant are set by collective-bargaining agreements between defendant and the UAW.

On October 2, 2003, Al-Birekdar filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR") against defendant, alleging harassment based on his national origin and color. After an investigation, the EEOC closed its file and issued Al-Birekdar a right-to-sue letter. However, Al-Birekdar did not at that time pursue any further legal action for the alleged harassment.

On March 7, 2005, Al-Birekdar submitted a "request for vacation" form to his supervisor, Ed Schoonover. Although Al-Birekdar intended to take his vacation the week of June 13, 2005, he inadvertently requested vacation for "week 29" — the week of July 11, 2005. However, on the back of the same "request for vacation" form, Al-Birekdar correctly circled the dates he was planning to take vacation — June 11 through June 17. Despite the inconsistency, Al-Birekdar's vacation request form was approved. Al-Birekdar was not aware of his mistake, and he never completed a "change of vacation" form.

On June 6, 2005, Al-Birekdar transferred from the third shift to the second shift, and his supervisor became Shorna Coffey. On June 7, 2005, Al-Birekdar spoke to Schoonover about his upcoming June 11 vacation, and Schoonover asked if Al-Birekdar had a form approving him for it. Al-Birekdar said that he did, and Schoonover said that Al-Birekdar did not need to ask permission to go on vacation. Al-Birekdar then asked if he could leave early on the

Friday before his upcoming vacation, and Schoonover said Al-Birekdar would have to ask his new supervisor, Coffey. Al-Birekdar then told Coffey that he was scheduled for vacation the following week, and that she might want to find someone to cover his shifts. He also told Coffey that his flight left early in the morning on Saturday, and asked if he could take a half-day on Friday. Coffey replied, "okay," although she did not at that time check to see if Al-Birekdar had actually been approved to take vacation the following week.

On Friday, after Al-Birekdar had left for vacation, Coffey checked the vacation schedule and determined that Al-Birekdar did not have a vacation scheduled for the following week. Coffey asked her and Schoonover's supervisor, Edgar Loaiza, if Schoonover had approved Al-Birekdar for vacation. After Loaiza spoke with Schoonover, who stated he had not approved vacation for Al-Birekdar during the week of June 13, Loaiza informed Coffey that Schoonover had not approved Al-Birekdar for vacation. Coffey then told Jan Carroll, a labor relations supervisor, what had happened, and Carroll told Coffey that Al-Birekdar should not be coded "on vacation" because he had not been approved to take his vacation that week. Nevertheless, on defendant's "open jobs to cover" list — a list which indicates what shifts need to be covered and was produced on June 20, 2005 — Al-Birekdar was listed as on "vacation all week."

4

Under § 49(c) of the collective bargaining agreement applicable to Al-Birekdar, an employee's seniority is terminated if he is absent for five days without notifying the employer. Since Al-Birekdar thought he was scheduled for vacation, he did not come to work for the entire week of June 13, 2005. On June 18, 2005, Henry Murawski, a human resources generalist, sent Al-Birekdar a letter terminating his employment. Murawski had only been working for defendant for approximately a month, and did not know Al-Birekdar's race, national origin, religion, or that Al-Birekdar had previously filed a charge of discrimination.

**Disputed Facts**

Al-Birekdar states in his deposition that soon after he began working for defendant, various co-workers and supervisors harassed him because of his national origin and skin color. Specifically, he states in 2000 he went to Coffey, his supervisor at that time, with complaints about being called a "camel jockey," and that she replied "you're not really well liked on third shift here...the guys don't want to work with a camel jockey." Al-Birekdar states that he reported that conversation to his steward, Ed Marrs, but is unsure if defendant conducted any investigation. Further, he states that in 2002, co-worker Kenny Frankenburg started calling him names and saying "you people don't belong here." He states he reported the incident to Carroll, but that there was no investigation. Additionally, Al-Birekdar states that

he had two conversations with Carroll about comments Schoonover made concerning the Muslim religion, in which Schoonover said that "Islam is nothing but bad people." Al-Birekdar has submitted evidence demonstrating that his 2003 EEOC/MHRC charge alleged that Coffey said "oh great we're getting a camel jockey on third," and that Schoonover was "a 23 year military guy that did not like the idea of me making waves...." Doc. #40. Finally, Al-Birekdar has submitted evidence that Carroll was interviewed by an investigator about his 2003 EEOC/MHRC charge.

Al-Birekdar states in his deposition that at least two other employees, Kenny Frankenburg and Larry Jones, were not scheduled to take vacation during the week of June 13, 2005, but were granted last-minute approval by their respective supervisors. Although these two individuals did not complete any vacation-request paperwork, they were not terminated.

### Standard of Review

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the

burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003) (quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998)).

**Discussion**

Al-Birekdar alleges in his petition that he is of Middle-Eastern descent; that almost as soon as he began working for defendant, "his supervisor began harassing him on account of his national origin/color by calling him names"; that Al-Birekdar engaged in a protected activity by filing a charge with the EEOC and the MCHR for unlawful hostile work environment; and that his ultimate termination was the product of illegal discrimination and a direct result of engaging in protected activity. Accordingly, Al-Birekdar asserts claims of discriminatory and retaliatory discharge pursuant to the MHRA. Defendant, however, argues that Al-Birekdar has not produced sufficient evidence to withstand its motion for summary judgment.

Missouri law controls this diversity case. Kunferman v. Ford Motor Co., 112 F.3d 962, 965 (8th Cir. 1997). The MHRA prohibits any employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion,

7

national origin, sex, ancestry, age or disability...." Mo. Rev. Stat. § 213.055.1(1)(a). The standard for claims brought pursuant to the MHRA, while similar to federal standards, "are not identical to the federal standards and can offer greater discrimination protection." Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 819 (Mo. 2007); see also Korando v. Mallinckrodt, Inc., 239 S.W.3d 647, 649 (Mo. App. 2007) (stating that "the Missouri Supreme Court recently determined the McDonnell Douglas [Corp. v. Green, 411 U.S. 792 (1973)] burden shifting analysis no longer applies" to actions brought under the MHRA). "If the wording in the MHRA is clear and unambiguous, then federal caselaw which is contrary to the plain meaning of the MHRA is not binding." Daugherty, 231 S.W.3d at 819 (quoting Brady v. Curators of Univ. of Mo., 213 S.W.3d 101, 112-13 (Mo. App. 2006)).

> The MHRA defines "discrimination" to include "*any* unfair treatment based on race, color, religion, national origin, ancestry, sex, age as it relates to employment, disability, or familial status as it relates to housing." Nothing in this statutory language of the MHRA requires a plaintiff to prove that discrimination was a substantial or determining factor in an employment decision; if consideration of age, disability, or other protected characteristics contributed to the unfair treatment, that is sufficient.

Id. (emphasis in original) (quoting Mo. Rev. Stat. § 213.010(5)).

When determining whether an MHRA claim "survives summary judgment, 'a plaintiff has no higher standard to survive summary judgment than is required to submit a claim to a jury.'" Lomax v.

8

DaimlerChrysler Corp., -S.W.3d-, 2007 WL 4386072, at *3 (Mo. App. Dec. 18, 2007) (quoting Daugherty, 231 S.W.3d at 820). The Missouri jury instructions set forth the factors for submission of an MHRA claim to a jury as follows:

> First, defendant...discharged...plaintiff, and
>
> Second...one or more of the protected classifications supported by the evidence such as race...<u>was a contributing factor</u> in such...discharge..., and
>
> Third, as a direct result of such conduct, plaintiff sustained damage.

MAI 31.24 (6th ed. supp. 2007) (emphasis added). Accordingly, a plaintiff's claim brought under the MHRA will survive summary judgment if there is a genuine issue of material fact as to whether his national origin, color, or religion <u>was a contributing factor</u> in the defendant's termination decision, and it is incumbent upon the Court to "determine whether the record shows two plausible, but contradictory, accounts of the essential facts and the 'genuine issue' in the case is real, not merely argumentative, imaginary, or frivolous." Daugherty, 231 S.W.3d at 820.[1]

---

[1] Defendant contends that Daugherty does not substantively change the familiar burden-shifting framework of McDonnell Douglas, in actions brought pursuant to the MHRA with only indirect evidence alleged. However, the Court notes that the no "direct-evidence" requirement appears in Daugherty, and that Daugherty clearly states that "Missouri employment discrimination law...should more closely reflect the plain language of the MHRA and...rely less on analysis developed through federal caselaw." Daugherty, 231 S.W.3d at 819. Consequently, the Court will proceed with the standard established by the Missouri Supreme Court. See Kunferman, 112 F.3d at 965 (citing state employment case law for the standard in ruling on a motion for summary judgment); Baker v. Silver Oak Senior Living Mgmt. Co., 2007 WL 2994318, at *7 (W.D. Mo. Oct. 11, 2007) ("Because of the issue raised by plaintiff and defendants' concession that Daugherty is theoretically

In this case, Al-Birekdar contends that defendant's decision to terminate his employment was discriminatory and in retaliation for engaging in protected conduct. He has produced evidence which, if believed, demonstrates a history of racially-based harassment by co-workers and supervisors. He has produced evidence that two of his supervisors (both of whom were consulted before making the decision not to code Al-Birekdar as on vacation) were implicated in Al-Birekdar's 2003 EEOC/MHRC charge. Further, the person who made the decision not to code him as on vacation knew of and was interviewed about Al-Birekdar's 2003 EEOC/MHRC charge. Finally, Al-Birekdar has produced evidence of two individuals who requested and were allowed to take vacation at the last minute without completing vacation-request forms. He argues that supervisors with a history of racial bias against Al-Birekdar knew of his mistake and set him up to leave for vacation thinking he was approved so defendant would have a pretext for the adverse employment action.

Defendant states that its decision to discharge Al-Birekdar was based <u>solely</u> on his mistake concerning his vacation schedule. To support this notion, defendant argues that the ultimate determination to terminate Al-Birekdar was made by Murawski's mechanical and nondiscriminatory application of the collective bargaining agreement applicable to Al-Birekdar. They

---

applicable, the Court will apply the 'contributing factor' standard in this case to plaintiff's claims under the MHRA.").

argue that Murawski, a relatively new employee, did not know Al-Birekdar's race, national origin, religion, or that Al-Birekdar had previously filed a charge of discrimination.

The determination of whether defendant's decision to terminate Al-Birekdar was motivated by discrimination and/or in retaliation for engaging in protected conduct, or whether it was solely for Al-Birekdar's vacation-selection mistake, depends in large part on the credibility of the witnesses. The Court finds that the record contains evidence to support two plausible, but contradictory, accounts of the essential facts and that Al-Birekdar's claims are not merely argumentative, imaginary, or frivolous. Consequently, summary judgment in this case is improper. Accordingly,

**IT IS HEREBY ORDERED** that defendant DaimlerChrysler Corporation's motion for summary judgment [Doc. #29] is denied.

Dated this __5th__ day of February, 2008.

/s/Donald J. Stohr
UNITED STATES DISTRICT JUDGE